# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

JESUS ESPARZA

FILED
J.N DEC 1 3 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CRIMINAL COMPLAINT

MAGISTRATE JUDGE COX

CASE NUMBER: 07CR 836

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about October 17, 2007, in Cook County, in the __Northern__ District of Illinois defendant did,

knowingly execute, and attempt to execute, a scheme and artifice to defraud a financial institution; and to obtain any of the money, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, by means of materially false or fraudulent pretenses, representations or promises, and for the purpose of executing the scheme to defraud, knowingly withdrew approximately $1,500 from bank account holders' accounts without the bank account holders' authorization or consent.

in violation of Title __18__ United States Code, Section __1344, and 2__.

I further state that I am a(n) __Special Agent with the U.S. Secret Service__ and that this complaint is based on the following

facts: See Attached Affidavit

Continued on the attached sheet and made a part hereof: __X__ Yes ____ No

Signature of Complainant

Sworn to before me and subscribed in my presence,

__12.13.07__
Date

at __Chicago, Illinois__
City and State

SUSAN E. COX
U.S. MAGISTRATE JUDGE

Signature of Judicial Officer

STATE OF ILLINOIS     )
                      )
COUNTY OF COOK        )

## AFFIDAVIT

I, Jonathan Lorenzi, Special Agent of the United States Secret Service, Department of Homeland Security, Chicago, Illinois, being duly sworn, depose and state as follows:

1. I have been employed as a Special Agent of the United States Secret Service since April, 2005. I received training at the Federal Law Enforcement Training Center in Glencoe, Georgia, and at the Secret Service training academy in Beltsville, Maryland. I am currently assigned to the Organized Crimes Task Force of the Chicago Field Office and have participated in numerous investigations, including bank fraud and counterfeiting.

2. I make this Affidavit from personal knowledge based upon my participation in the investigation, reports I have read and conversations I have had with others who have personal knowledge of the events and circumstances described herein.

3. The information provided below is for the limited purpose of establishing probable cause to believe that JESUS ESPARZA ("ESPARZA") did knowingly execute and attempt to execute a scheme to defraud a financial institution and obtain monies, funds, securities, credits, assets, and other properties owned by, and under the custody and control of, a financial institution, by means of false and fraudulent pretenses, representations or promises in violation of Title 18, United States Code, Section 1344.

4. Because the information outlined below is provided for the limited purpose of establishing probable cause, it does not contain all details or all facts of which I am aware relating to this investigation.

## General Description of the Fraud Scheme

5. Law enforcement agents learned from investigators of JP Morgan Chase Bank ("JPMC") that from approximately May 12, 2003, through on or about May 2, 2007, a male individual, later identified as Cooperating Defendant 1 ("CD1"), entered various JPMC branches in the Chicago area and withdrew money from legitimate bank accounts without the account holder's authorization or consent. Prior to January 1, 2005, JPMC Bank was known as Bank One.

6. The investigation has revealed that in order to withdraw the money, CD1 tendered fraudulent identification that falsely represented him as the account holder to various tellers. At the same time, CD1 also provided the tellers with a withdrawal slip with the legitimate account holder's name and correct account number. During this time period, CD1 fraudulently withdrew approximately $434,454.00 from JPMC accounts. In order to withdraw the money, CD1 was provided with legitimate account holder's names and account numbers by ESPARZA, who works for JPMC. ESPARZA or CD1 would also get false identification with CD1' photograph and the legitimate account holder's identifiers to execute the scheme.

## Summary of the Evidence

7. On or about September 13, 2007, CD1 was arrested on a federal arrest warrant for bank fraud. CD1 subsequently agreed to cooperate with the investigation. In a debriefing with Secret Service agents, CD1 stated he (CD1) participated in the fraud scheme to withdraw money from JPMC account holders' accounts along with ESPARZA, a JPMC bank employee.

8. CD1 further stated that he (CD1) met ESPARZA a few years ago at a Chicago bar. After they met, ESPARZA asked if CD1 was interested in making some extra money. ESPARZA then informed CD1 that ESPARZA was a bank teller and as a result, ESPARZA had access to customers' account information. ESPARZA further stated he would provide CD1 with legitimate customers' names, addresses, and account numbers. ESPARZA or CD1 would then obtain counterfeit identification with CD1's photo, but with the legitimate account holder's identifiers. ESPARZA or CD1 would then complete a withdrawal slip for the legitimate customers' accounts. ESPARZA and CD1 would then travel together to Chicago-area JPMC branches. CD1 would enter the branch, present the teller with the withdrawal slip and counterfeit identification and withdrawal funds. The two would then split the proceeds. Soon thereafter, CD1 agreed to participate in the fraudulent withdrawals with ESPARZA

9. While cooperating with law enforcement, CD1 reviewed video surveillance photographs taken by JPMC at the time fraudulent withdrawals were made from JPMC accounts. CD1 identified himself as the person making the fraudulent withdrawals in surveillance photographs taken from approximately May 12, 2003, to on or about May 2, 2007. Based on JPMC records, during this time period, CD1 fraudulently withdrew approximately $434,454.00 from JPMC accounts. According to CD1, ESPARZA provided the account holder's information for each of these fraudulent withdrawals and was given a portion of the fraud money CD1 fraudulently withdrew.

10. On September 14, 2007, with the assistance of law enforcement, CD1 made a consensually recorded phone call to ESPARZA. During the call, CD1 asked ESPARZA if he had acquired any customer information so the two could make further withdrawals. ESPARZA stated he

did not have anything at the time. However, during the call ESPARZA and CD1 set up a meeting for later that night to discuss future withdrawals. ESPARZA later called CD1 and cancelled the meeting.[1]

11. On September 26, 2007, CD1 made another phone call to ESPARZA. During this call, ESPARZA stated he (ESPARZA) had identified possible bank accounts that could be used to make withdrawals. ESPARZA also stated he (ESPARZA) would have more information on or about October 1, 2007. ESPARZA and CD1 agreed to meet again later.

12. On or about October 10, 2007, CD1 met with ESPARZA during a consensually recorded meeting at a local restaurant in Cicero, Illinois. Law Enforcement searched CD1 prior to this meeting for contraband or money, with negative results. Law enforcement also observed CD1 during the meeting. According to the recorded meeting and the documents provided to law enforcement immediately after the meeting, ESPARZA gave CD1 a JPMC Consumer Signature Card for Individual A, which contained personal identifiers for Individual A, and Individual A's JPMC account number at the meeting. ESPARZA also instructed CD1 to obtain two forms of counterfeit identification bearing his photograph and Individual A's identifiers. CD1 agreed to get the counterfeit identification to conduct the fraudulent withdrawal.[2]

13. On or about October 12, 2007, CD1 obtained a counterfeit Michigan driver's license and

---

[1] All communications set out in this affidavit between ESPARZA and CD1 after September 14, 2007, were consensually recorded, unless stated otherwise.

[2] As CD1 began cooperating with law enforcement, law enforcement agents searched CD1 prior to each meeting CD1 had with ESPARZA for contraband or money, with negative results each time. Law enforcement also observed CD1 during each of his meetings.

Mexican Consular Identification card bearing his photograph and Individual A's personal identifiers, which were previously provided by ESPARZA. Subsequently, CD1 made another phone call to ESPARZA in which CD1 left a voicemail message for ESPARZA stating he (CD1) had obtained the false identification and was awaiting further instructions from ESPARZA. ESPARZA called CD1 back later that night and stated they (ESPARZA and CD1) would meet in Cicero on the morning of October 17, 2007. ESPARZA further stated that ESPARZA would inform CD1 at that meeting which JPMC branch or branches they would travel to in order to conduct fraudulent withdrawals from Individual A's legitimate account. This phone call was consensually recorded by law enforcement.

14. On October 17, 2007, at approximately 8:55 a.m., ESPARZA met CD1 in Cicero as planned. Law enforcement surveillance then saw ESPARZA and CD1 drive their own vehicles from the restaurant to a Jewel-Osco in Evanston, Illinois. Law enforcement surveillance later saw ESPARZA leave his car in the parking lot. Law enforcement surveillance then saw ESPARZA enter CD1's vehicle and the two traveled together in CD1' vehicle to the JPMC branch at 635 North Chicago Avenue, Evanston.

15. The following conversation, which was consensually recorded by law enforcement took place between CD1 and ESPARZA, while CD1 and ESPARZA were both in CD1' vehicle near the JPMC branch at 635 North Chicago Avenue in Evanston:

> ESPARZA: Do you know how much to take out?
>
> CD1: I don't know. How much?
>
> ESPARZA: I was thinking like seven or eight (hundred).

> CD1: Seven or eight?
>
> ESPARZA: Yeah, at least seven; upon… (Inaudible) you understand me?
>
> CD1: $750. Are they going to ask for both (IDs)?
>
> ESPARZA: This place? One.
>
> CD1: You going to wait for me here?
>
> ESPARZA: Yeah.

16. Shortly thereafter, CD1 entered the JPMC bank branch as instructed by ESPARZA. While in the JPMC bank branch, CD1 stated that CD1 used a withdrawal slip with Individual A's account information as well the false identification bearing Individual A's identifiers to make a withdrawal from Individual A's JPMC bank account. Using this information, CD1 withdrew approximately $750 from Individual A's JPMC bank account.

17. After leaving the bank, CD1 returned to his vehicle where ESPARZA was waiting for CD1. According to CD1, after returning to the vehicle, CD1 provided ESPARZA with approximately $250. ESPARZA and CD1 also agreed to make a second withdrawal from Individual A's account later that same day. During this meeting, the following conversation was recorded via consensual intercept:

    > CD1: There's $750 here.
    >
    > ESPARZA: Bah. The two (IDs)…
    >
    > CD1: How much?
    >
    > ESPARZA: They cost $250, right?
    >
    > CD1: $325, no?

>ESPARZA: $250 for the IDs, $250 to you, $250 for me.
>
>CD1: We going to another bank? Or… what do you want to do? I have plenty of time… as long as we're here.
>
>ESPARZA: Don't you have to work or do you have…? If we're going to do another one, let's wait about a half hour.
>
>CD1: If you want, we only have to wait a little bit.
>
>ESPARZA: Let's go to a McDonald's or something.

18. Shortly thereafter, ESPARZA and CD1 traveled together to a nearby restaurant. The same day at approximately 11:00 a.m., ESPARZA and CD1 drove together in CD1's vehicle from the restaurant to the same JPMC branch that CD1 had previously used to make a withdrawal from Individual A's bank account.

19. While ESPARZA and CD1 were in CD1's vehicle, they agreed to withdraw approximately $800 from Individual A's JPMC bank account. The following conversation was recorded:

    >CD1: then … How much?
    >
    >ESPARZA: Eight man… around the same as last time.
    >
    >CD1: Yeah? Eight hundred then.

20. Shortly after this conversation took place, CD1 left the vehicle and entered the JPMC branch to make a second withdrawal from Individual A's account. CD1 again used his fake identification and Individual A's account information to make a second withdrawal from Individual A's JPMC bank account. On this occasion, CD1 withdrew approximately $800 from Individual A's JPMC bank account.

21. When CD1 returned to his vehicle, where ESPARZA was waiting inside, CD1 provided ESPARZA with approximately $400. The following conversation was recorded pursuant to a consensual intercept:

> CD1: Eight. Eight hundred. Here's four.
>
> ESPARZA: Tomorrow I'm working till 4.
>
> CD1: So tomorrow at 4 then… you sure?
>
> ESPARZA: Yes.
>
> CD1: You leaving the IDs with me?
>
> ESPARZA: You can keep them if you want.
>
> CD1: OK.

22. Subsequently, CD1 and ESPARZA agreed to meet on December 6, 2007. On December 6, 2007, CD1 met with ESPARZA during a consensually recorded meeting in Berwyn, Illinois. During the meeting, ESPARZA gave CD1 a JPMC signature card for Individual B, which contained Individual B's personal identifiers, and Individual B's account number.

23. That same day, CD1 obtained a counterfeit Illinois driver's license bearing his photograph and Individual B's personal identifiers. Subsequently, during a consensually recorded phone call, CD1 left a voicemail message for ESPARZA stating he had obtained the false identification and was awaiting instructions from ESPARZA.

24. On December 11, 2007, ESPARZA called CD1 and ESPARZA and instructed CD1 to meet ESPARZA in Cicero, Illinois the morning of December 13, 2007. ESPARZA also stated that ESPARZA would inform CD1 at that meeting which JPMC branch or branches they would travel to in order to conduct fraudulent withdrawals from Individual B's account.

25. On December 13, 2007 at approximately 8:30 a.m., your affiant met CD1. Your affiant searched CD1 for contraband or money with negative results. Your affiant then provided CD1 with $1000 in United States Currency to conduct the fraudulent transaction with CD1. The $1000 was recorded by law enforcement before it was provided to CD1.

26. Later that day, CD1 and ESPARZA met in a Walgreens parking lot located at Cicero Avenue and 22nd Street in Cicero, Illinois. The two (ESPARZA and CD1) then drove separately to a JPMC bank branch located at 5687 S. Archer Avenue in Chicago, Illinois. CD1 spoke with ESPARZA for a short time outside of the parked cars and proceeded alone into the JPMC bank branch.

27. CD1 and ESPARZA then agreed that CD1 would enter the JPMC bank branch and withdraw approximately $800 from Individual B's JPMC bank account. CD1 entered the bank, but as instructed by law enforcement, CD1 did not make a withdrawal from JPMC bank branch. Instead, CD1 left the JPMC Branch with the $1000 provided by law enforcement.

28. Upon exiting the JPMC bank branch, CD1 entered the vehicle where ESPARZA was waiting and divided the pre-recorded money that I gave to CD1 earlier in the

morning. CD1 gave ESPARZA $400 of the pre-recorded United States Currency. ESPARZA was then arrested by the U.S. Secret Service agents at approximately 9:54 a.m. while inside his car. Upon his arrest, the $400 in pre-recorded bills that CD1 had provided to ESPARZA was found by law enforcement in the cup holder of ESPARZA's vehicle.

29. Based on the above information, there is probable cause to believe that ESPARZA did knowingly execute and attempt to execute a scheme to defraud a financial institution or obtain monies, funds, securities, credits, assets, or other properties owned by, or under the custody or control of, a financial institution, by means of false of fraudulent pretenses, representations or promises in violation of 18, United States Code, Section 1344.

FURTHER AFFIANT SAYETH NOT

_____
Jonathan D. Lorenzi, Special Agent
United States Secret Service

Sworn to before me and subscribed in my presence
this 13th day of December 2007.

_____
SUSAN E. COX
United States Magistrate Judge.

10